IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NICOLAS ALLEN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiff,<br><br>v.<br><br>FORNEY INDUSTRIES, INC.,<br><br>Defendant. | Case No. 4:22-cv-00421-RK |

# ORDER

This is a putative class action seeking economic damages for an allegedly defective bonded abrasive wheel manufactured, produced, distributed, and sold by Defendant, Forney Industries, Inc. Plaintiff Nicolas Allen asserts claims under the Missouri Merchandising Practices Act and Missouri's Uniform Commercial Code, as well as common law claims for unjust enrichment, strict liability, and negligence. The putative class action alleges that Defendant's bonded abrasive wheels are defective because they do not include a clear expiration label despite having a shelf-life or expiration date after which the bonded abrasive wheels fail if used. Now before the Court is Defendant's motion to dismiss. (Doc. 7.) The motion is fully briefed (Docs. 8, 11, 12), including supplemental authority and suggestions (Docs. 14-1, 20). After careful consideration and for the reasons explained below, the Court **ORDERS** that (1) Defendant's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction is **DENIED**, and (2) Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim is **GRANTED**. Because Counts II-V are barred by the economic loss doctrine, they are **DISMISSED with prejudice**. Counts I and VI are **DISMISSED without prejudice**.

I.  **Background**[1]

Defendant manufacturers, produces, distributes, and sells bonded abrasive wheels that are used with power tools like angle grinders and chop saws to cut metal and concrete. (Doc. 1 at

---

[1] In considering Defendant's motion to dismiss, the Court takes the facts pleaded in Plaintiff's complaint as true and construes them in the light most favorable to Plaintiff as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

¶ 16.) When used, the bonded abrasive wheels spin at speeds from 4,400 RPM to 19,100 RPM. (*Id.*) The bonded abrasive wheels have a shelf-life or expiration date. (*Id.* at ¶ 18.) If used after the wheel has expired, "it will give way, crack, split, explode and fail." (*Id.* at ¶ 17.) Industry standards require a clear expiration date be placed on the label of the bonded abrasive wheels. (*Id.* at ¶ 19.) Specifically, the Health and Safety Executive Committee states in its *Safety in the use of abrasive wheels* [*sic*] handbook, "All organic bonded wheels for hand-held applications will bear a use-by date of three years from the date of manufacture." (*Id.*) In addition, the Federation of European Producers of Abrasives establishes an expiration date or shelf life date of three years as well, which Plaintiff alleges is recognized by "United States manufacturers of abrasive wheels as an industry standard." (*Id.* at ¶ 20.)

Defendant's bonded abrasive wheels are sold in more than 20,000 retail stores nationwide. (*Id.* at ¶ 22.) Some bonded abrasive wheels are sold despite having already expired. (*Id.*) Plaintiff alleges he has purchased "one or more" of the bonded abrasive wheels "within the last two years." (*Id.* at ¶ 7.) He alleges that when he purchased the bonded abrasive wheels, he did not know that they could not be safely used after their shelf life expired. (*Id.*) Plaintiff alleges that he "wishes to continue purchasing" the bonded abrasive wheels but without "clear and understandable advertising, packaging and/or labeling" regarding the wheels' expiration date, he will be unable to "ensure that the abrasive wheel products purchased from Defendant are not expired or nearly expired at the time of purchase and used prior to expiration." (*Id.* at ¶ 23.)

Both individually and on behalf of the class, Plaintiff seeks recovery for economic injury in the form of "a refund of monies paid" and injunctive relief; the complaint specifically excludes damages, losses, and relief arising from personal injuries. (*Id.* at ¶¶ 32-33.)

Plaintiff asserts six claims for relief: Count I – violation of the Missouri Merchandising Practices Act ("MMPA"); Count II – unjust enrichment; Count III – strict liability (design defect); Count IV – strict liability (failure to warn); Count V – negligence; and Count VI – breach of implied warranty. Defendant argues that Plaintiff's claims must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Defendant also argues that Plaintiff's class action allegations must be stricken under Rules 12(b)(1), 12(b)(6), and 12(f).

## II. Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for lack of subject-matter jurisdiction. In a facial attack on subject-matter jurisdiction, the focus is on the face of the pleadings and "asserts that the [complaint] fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (citation and quotation marks omitted). In doing so, the Court must review only the pleadings themselves, accept the jurisdictional facts pleaded as true, and draw all reasonable inferences in the plaintiff's favor. *Knox ex rel. J.D. v. St. Louis City Sch. Dist.*, No. 4:18-cv-00216-PLC, 2018 WL 6524009, at *2 (E.D. Mo. Dec. 12, 2018).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim for relief. In order to avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The plausibility pleading standard requires a showing of more than just a mere possibility that the relief sought is in fact obtainable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a 12(b)(6) motion to dismiss, the Court must accept the plaintiff's specific factual allegations as true, but it is not obligated to accept as true the plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

Finally, Rule 12(f) authorizes district courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Regarding putative class actions specifically, district courts may, under Rule 12(f), strike class action allegations "if it is apparent from the pleadings that the class cannot be certified." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (citation and quotation marks omitted).

## III. Discussion

### A. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

First, Defendant argues that Plaintiff's complaint must be dismissed because Plaintiff does not allege that any of the bonded abrasive wheels *he* purchased had malfunctioned or failed when used after they had expired or otherwise. In other words, Defendant argues that Plaintiff has failed to plead that the defect fundamentally at issue in this case – i.e., that the bonded abrasive wheels have an expiration or shelf-life after which they are dangerous to use – manifested in any of the bonded abrasive wheels Plaintiff himself had actually purchased. (Doc. 8 at 11 ("Plaintiff does

3

not allege that the Products he himself purchased have cracked, failed, or otherwise manifested the alleged defect.") (cleaned up).)

Defendant thus appears to argue for dismissal based on the Eighth Circuit's so-called "manifest-defect rule." In this circuit, the manifest-defect rule requires that in cases seeking recovery based only on an economic injury from an asserted defect in a given product, the underlying defect must be present or manifest in the product purchased by a plaintiff; in other words, alleging only the existence of a defect in a product line or that a plaintiff owns a product that is at some risk for manifesting a defect is not enough. *In re Polaris Mktg., Sales Pracs., & Prods. Liab. Litig.*, 9 F.4th 793, 797 (8th Cir. 2021) ("*Polaris*").

Although Defendant primarily frames its motion to dismiss as brought under Rule 12(b)(6) for failure to state a claim (including its argument that Plaintiff's complaint does not satisfy the manifest-defect rule), Defendant also recognizes that in *Polaris*, the Eighth Circuit "viewed the plaintiffs' failure to allege that their own vehicles manifested the purported defect 'through the lens of Article III' and Rule 12(b)(1)." (Doc. 8 at 10 n.5 (quoting *Polaris*, 9 F.4th at 797).) In recognizing the manifest-defect rule as implicating a plaintiff's Article III standing, the Eighth Circuit has acknowledged earlier decisions applying the same rule but under the Rule 12(b)(6) claims-pleading framework. *Polaris*, 9 F.4th at 796-97 (citing *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009); *Briehl v. Gen. Motor Corp.*, 172 F.3d 623 (8th Cir. 1999)). Since those earlier cases, however, the Eighth Circuit has repeatedly clarified that the manifest-defect rule implicates the court's subject-matter jurisdiction and is not merely a claims-pleading issue. *See Polaris*, 9 F.4th at 797 (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (recognizing the manifest-defect rule as implicating Article III standing requirement)). Indeed, in *Johannessohn v. Polaris Industries Inc.*, 9 F.4th 981 (8th Cir. 2021), the Eighth Circuit held: "In this circuit, plaintiffs claiming economic injury do not have Article III standing in product defect cases unless they show a manifest defect." *Id.* at 988. Accordingly, the Court finds the manifest-defect argument raised by Defendant here is more properly analyzed as a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction; specifically implicating the constitutional requirement that a plaintiff in federal court must have suffered a cognizable injury-in-fact under Article III of the United States Constitution.

Federal courts are courts of limited (not general) jurisdiction. *See* U.S. Const. art. III, § 2 (the federal judicial power extends only to "Cases" and "Controversies"). The doctrine of standing

under Article III is "rooted in the traditional understanding of a case or controversy," and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (citations omitted). Generally, plaintiffs in a case before a federal court (including any named plaintiffs in a class action lawsuit, *see id.* at 338 n.6) must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 560-61 (1992)) (other citation omitted)). These three elements – an injury in fact, traceability, and redressability – constitute the "'irreducible constitutional minimum of [Article III] standing.'" *Id.* (quoting *Lujan*, 605 U.S. at 560). As relevant here, the requirement that the plaintiff have suffered an injury in fact means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). Finally, in *Lujan*, the Supreme Court recognized that "each [jurisdictional] element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." 504 U.S. 555, 561 (1992) (collecting cases). Accordingly, the Supreme Court explained that "general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate an injury in fact at the early pleading stage. *Id.* at 561 (citation and quotation marks omitted).[2]

In the Eighth Circuit, then, Article III standing in cases seeking relief only for economic (not personal or property) injury from a product defect is only satisfied so long as the underlying defect is manifest or present in the product the plaintiff purchased. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616-17 (8th Cir. 2011) (finding Article III standing satisfied for homeowner-purchasers of plumbing system for those plaintiffs whose plumbing system had not actually begun to leak ("dry plaintiffs") where evidence showed the plumbing systems were not

---

[2] As this Court recently recognized in *Tuter v. Freud America, Inc.*, No. 4:22-cv-00282-RK, 2022 WL 4636225 (W.D. Mo. Sept. 30, 2022), there appears to be conflicting panel decisions whether *Lujan*'s general-factual-allegation standard for jurisdictional allegations remains applicable post-*Twombly*/*Iqbal*. *See id.* at *2 n.4 (noting varied Eighth Circuit cases discussing this issue and applying different standards). Post-*Twombly* and *Iqbal*, the Eighth Circuit has generally continued to recognize *Lujan*'s general-allegation standard for pleading Article III standing (despite some question being raised as to the continued application thereof), *see, e.g.*, *Rydholm v. Equifax Info. Servs., LLC*, 44 F.4th 1105, 1018 (8th Cir. 2022); *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569-70 (8th Cir. 2007), and the Court will therefore do the same in this case at the early pleadings stage.

merely at risk of developing the asserted defect – stress corrosion cracking – but that it "afflicts all of the fittings upon use, regardless of water conditions or installation practices" and "develops . . . as soon as [the fittings] are exposed to domestic water") (quotation marks omitted). This includes products-liability cases seeking relief under state-law consumer protection and common law claims like negligence and unjust enrichment, and similar claims. *See, e.g.*, *Johannessohn*, 9 F.4th at 984; *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014).

Defendant emphasizes allegations in the complaint alleging a "risk" that the bonded abrasive wheels "may" fail if used after the expiration date or shelf life. (*See* Doc. 1 at ¶¶ 3, 7, 18, 53, 69.) However, Plaintiff also includes numerous allegations – broadly construed under *Lujan*'s general-allegation standard – that the bonded abrasive wheels "will" fail if used after the expiration date.[3] At this early pleading stage, the Court finds Plaintiff has sufficiently pleaded an Article III injury in fact in light of the Eighth Circuit's manifest-defect rule, to the extent Plaintiff's complaint includes allegations that *when* the bonded abrasive wheels reach their expiration date or shelf-life, if used after that time they *will* fail. *See Zurn*, 644 F.3d at 617; *O'Neil*, 574 F.3d at 503 ("It is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect.") (citations omitted). Defendant's motion to dismiss Plaintiff's complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction in light of the Eighth Circuit's manifest-defect rule is therefore **DENIED**.

### B. Rule 12(b)(6) – Failure to State a Claim

#### 1. Count I (MMPA)

As to its Rule 12(b)(6) claims-pleading challenge, Defendant first argues that Plaintiff fails to state a claim under the MMPA because the complaint (1) does not satisfy Rule 9(b)'s heightened pleading standard, and (2) does not adequately plead that Plaintiff purchased the product for a particular purpose under the MMPA.

---

[3] *See* Doc. 1 at ¶ 17 ("if the [bonded abrasive wheel] is used after the expiration date it *will* give way, crack, split, explode and fail") (emphasis added); ¶ 41 ("Plaintiff . . . had no information to suggest that the [bonded abrasive wheel] had an expiration date that, after which, the product would become worthless due to the risk of harm from giving way, cracking, splitting, exploding, or failing with reasonably anticipated use"); ¶ 48 ("Plaintiff . . . purchased products from the Defendant that they would not have purchased had they known that the products, when used as anticipated, crack, split, explode and fail"); ¶ 62 (the bonded abrasive wheel lacked warnings that it "expires and that it would crack, split, splinter, warp, explode and otherwise fail and become dangerous and cause injury").

6

In relevant part as stated above, the MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." § 407.020.1, RSMo. State law authorizes a civil action for violation of the MMPA only when "[a]ny person who purchases . . . merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." § 407.025.1(2), RSMo. Furthermore, state law provides that a person seeking damages under the MMPA must establish: (1) "the person acted as a reasonable consumer would in light of all circumstances"; (2) "the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages"; and (3) the individual damages or loss suffered are "sufficiently definitive" and "objective evidence . . . allow[s] the loss to be calculated with a reasonable degree of certainty." § 407.025.1(2), RSMo.

Notwithstanding Defendant's argument under Rule 9(b)'s heightened pleading standard, the Court finds that Plaintiff fails to state a claim for violation of the MMPA because he does not adequately allege the *primary purpose* for which he purchased any of the bonded abrasive wheels. *See* § 407.025.1(1), RSMo. Plaintiff pleads no facts beyond a purely conclusory allegation that the bonded abrasive wheels he purchased were primarily purchased for the three statutorily mandated purposes, and thus fails to state a claim under the MMPA. *See Crown Foods, Inc. v. Mercedes-Benz USA, LLC*, No. 4:22-CV-663 SRW, 2022 WL 17338083, at *3 (E.D. Mo. Nov. 30, 2022); *Noe v. Chastain*, No. 6:19-cv-03030-SRB, 2019 WL 1560464, at *4 (W.D. Mo. Apr. 10, 2019); *Anderson v. High-Tech Inst.*, No. 11-0506-CV-W-SOW, 2013 WL 12203311, at *2 (W.D. Mo. Jan. 25, 2013); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Defendant's motion to dismiss Count I is therefore **GRANTED**.[4]

---

[4] Defendant also argues that Plaintiff fails to state a claim for injunctive relief under the MMPA. (Doc. 8 at 11.) Because the Court grants Defendant's motion to dismiss Plaintiff's MMPA claim, however, the Court need not consider Defendant's motion to dismiss Plaintiff's claim for injunctive relief under the MMPA. *See Freeman Health Sys. v. Wass*, 124 S.W.3d 504, 509 (Mo. Ct. App. 2004) (§ 407.025 "provides no *independent* cause of action" but equitable relief is available "only after a claimant has successfully brought suit for actual damages").

### C. Counts II (unjust enrichment), III (strict liability – design defect); IV (strict liability – failure to warn), and V (negligence)

Next, Defendant argues that Plaintiff fails to state a claim as to Counts II-V (Plaintiff's common law and strict liability claims) because each claim is barred as a matter of law under Missouri's economic loss doctrine. In Missouri, "remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130-31 (Mo. banc 2010) (citation omitted). Said another way, Missouri's so-called "economic loss doctrine" "bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (citation and quotation marks omitted). Defendant argues that these common law claims are barred by the economic loss doctrine because each of Plaintiffs' claims is based on defects in the product and only seeks to recover economic loss as a result of the alleged underlying defect. Plaintiff broadly argues that Missouri's economic loss doctrine does not apply here because (1) the doctrine only applies to cases involving commercial parties, and (2) the doctrine does not apply "when a duty exists separately and independently from the contract." (Doc. 11 at 18.)

First, the Court finds unpersuasive Plaintiff's argument that the economic loss doctrine only applies to commercial parties. In making this argument, Plaintiff primarily relies on *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965 (W.D. Mo. 2021), in which the district court held that the plaintiffs' fraud claims were not barred by Missouri's economic loss doctrine and explained the doctrine as follows: "[Missouri's] economic loss doctrine prohibits a commercial buyer of goods 'from seeking to recover in tort for economic losses that are contractual in nature.'" *Id.* at 973 (quoting *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905-06 (8th Cir. 2013) (itself quoting *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010))). The Court does not find this argument persuasive.

While the economic loss doctrine as stated in *Dannix* did refer to a commercial buyer, the Eighth Circuit did not have occasion to consider whether Missouri's economic loss doctrine applies *only* to commercial parties, that is to the exclusion of ordinary consumers, if only for the reason that the plaintiff in *Dannix* was not an ordinary consumer but a commercial party. *See* 732 F.3d at 904.[5] Similarly, nothing in *Autry Morlan* (cited by *Dannix*) suggests any commercial-

---

[5] The Eighth Circuit in *Dannix* did cite to a Seventh Circuit decision in which court of appeals

consumer distinction regarding Missouri's economic loss doctrine, either. In *Autry Morlan*, the Missouri Court of Appeals broadly stated the economic loss doctrine in Missouri as "prohibit[ing] a plaintiff from seeking to recover in tort for economic losses that are contractual in nature," or in other words limiting recovery in tort for economic damages "only . . . where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Autry Morlan*, 332 S.W.3d at 192 (collecting cases). Moreover, like *Dannix* as explained above, *Autry Morlan* itself involved commercial parties (i.e., an automobile dealership and a floor-plan financing provider (and its employee) and insurance broker), and thus did not have occasion to consider whether the economic loss doctrine in Missouri applies to consumer-purchasers and commercial-purchasers alike.

In *Autry Morlan*, the Missouri Court of Appeals recognized a 1987 Missouri Supreme Court decision, *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. banc 1987), as the "roots" of Missouri's economic loss doctrine. *Autry Morlan*, 332 S.W.3d at 192. Rather than having a foundation in any commercial context, *Crowder* itself involved an individual's private purchase of a home from the original purchaser and the new owner's subsequent action against the contractor who built the home. *See id.* at 192 (referring to *Crowder*).[6]

In applying Missouri's economic loss doctrine, state courts do not appear to have delineated a commercial-consumer distinction and have applied the economic loss doctrine to bar claims brought by consumers or based upon a consumer (not commercial) purchase. *See, e.g., Acol v. Travers Autoplex & RV, Inc.*, 637 S.W.3d 415, 421-22 (Mo. Ct. App. 2021) (no plain error in jury instruction for economic loss doctrine in lawsuit following consumer's purchase of an RV); *Sharp Bros. Contracting v. Am. Hoist & Derrick Co.*, 714 S.W.2d 919, 920 (Mo. Ct. App. 1986) (negligence claim following individual's purchase of a crane – and later leasing it to a construction

---

suggested that the economic loss doctrine generally applies only to commercial plaintiffs. 732 F.3d at 908 (citing *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865-66 (7th Cir. 1999)). In doing so, the Seventh Circuit in *Amway*, in turn, cited in support of this proposition an earlier Eighth Circuit decision. *Amway*, 174 F.3d at 866 (citing *AKA Distributing Co. v. Whirlpool Corp.*, 137 F.3d 1083 (8th Cir. 1998)). Rather than Missouri law, however, *AKA Distributing* involved application of the economic loss doctrine under Minnesota law, and moreover, like *Dannix*, *AKA Distributing* itself ultimately involved a commercial (rather than consumer) purchaser-plaintiff.

[6] In *Crowder*, the Missouri Supreme Court ultimately concluded that "implied warranty recovery provides an adequate and appropriate remedy" for the home purchaser alleging latent defects in the home "and that a second theory of recovery based on failure to use ordinary care should not be authorized." 564 S.W.2d at 884.

9

company – barred by economic loss doctrine). Indeed, in *Sharp*, the Missouri Supreme Court framed the issue before the Court as: "whether . . . recovery may be had *by consumers* for damages to the product sold" (with of course, the state supreme court ultimately concluding that recovery under strict liability for tort would not be allowed where the only damage was to the product sold). 703 S.W.2d at 903 (emphasis added). And federal courts applying Missouri's economic-loss doctrine have largely done the same. *Hammack v. Harbor Freight Tools USA, Inc.*, No. 22-CV-00312-SRB, 2022 WL 14225017, at *4 (W.D. Mo. Oct. 24, 2022) (consumer plaintiffs' claims barred by economic loss doctrine); *Johnsen*, 2015 WL 631361, at *7-8 (plaintiff-homeowner's negligence claim following purchase of humidifier for his home barred by economic loss doctrine); *Budach*, 2015 WL 3853298, at *1 & *6 (plaintiff-homeowner's negligence claim following purchase of plumbing system for use in his home barred by economic loss doctrine); *Pollard v. Remington Arms Co., LLC*, No. 13-0086-CV-W-ODS, 2013 WL 3039797 (W.D. Mo. June 17, 2013) (plaintiff-consumer's strict liability and negligence claim following purchase of Remington rifle barred by economic loss doctrine); *but see Browning*, 539 F. Supp. 3d at 973-74.

Second, Plaintiff broadly argues that Missouri's economic loss doctrine does not apply in cases involving extra-contractual duties. The Court is not persuaded by this argument, either. As stated above, Missouri law provides a remedy for economic loss as a result of damage to or defects in products sold only under the warranty provisions of the UCC. *Hammack*, 2022 WL 14225017, at *4 (citing *Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co.*, 668 S.W.2d 601, 602 (Mo. Ct. App. 1984)); *accord Renaissance Leasing*, 322 S.W.3d at 130-31. Indeed, as the Eighth Circuit recognized in *Dannix*, "Missouri's economic loss doctrine bars recovery for negligence, and strict liability where the only damage is to the product sold." 732 F.3d at 906 (8th Cir. 2013) (citations and quotation marks omitted). There, the Eighth Circuit found plaintiff's negligent misrepresentation claim was barred by Missouri's economic loss doctrine to the extent the claim "derives from [plaintiff's] disappointed commercial expectations." *Id.* at 909; *see also Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV594 RLW, 2015 WL 631361, at *8 (E.D. Mo. Feb. 12, 2015) (rejecting plaintiff's argument that tort claims arising from common law – not a contract – where not barred by the economic loss doctrine because the plaintiff did not allege personal injury or damage to other property, but only damage to the product sold); *Budach*, 2015 WL 3853298, at *6 (recognizing that the economic loss doctrine "precludes a claim of product liability or negligence with respect to damages to the product itself") (collecting Missouri cases) (holding

plaintiff's negligence claim barred by the economic loss doctrine "to the extent he seeks to recover the cost of repairing or replacing the" allegedly defective products).

As to Plaintiff's unjust enrichment claim, federal district courts in Missouri have held the economic loss doctrine bars unjust enrichment claims like the one Plaintiff asserts here. *Hammack*, 2022 WL 14225017, at *4; *Flynn v. CTB, Inc.*, No. 1:12-CV-68 SNLJ, 2013 WL 28244 (E.D. Mo. Jan. 2, 2013) (finding plaintiff's unjust enrichment claim barred by economic loss doctrine; relying on *Renaissance Leasing*); *cf. Steadfast Ins. Co. v. ARC Steel, LLC*, No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *3 (W.D. Mo. May 13, 2019) (holding economic loss doctrine does not bar negligence claim that was "based on the alleged manner in which Defendant installed the steel and the damage this caused, not any defective condition of the steel itself"). Plaintiff's unjust enrichment claim – like the other tort claims above – is fundamentally grounded in the asserted economic injury based upon a defect in the bonded abrasive wheels. Under Missouri law, recovery is available if at all under the UCC's warranty provisions.

Accordingly, the Court finds that Plaintiff's claims for unjust enrichment, strict liability, and negligence are barred by Missouri's economic loss doctrine. Defendant's motion to dismiss Counts II-V for failure to state a claim is therefore **GRANTED**.

### D. Count VI (Breach of implied warranty of merchantability)

Finally, Defendant argues that Plaintiff's claim for breach of implied warranty of merchantability must be dismissed for failure to state a claim because Plaintiff does not sufficiently plead (1) adequate pre-suit notice as required by Missouri law to assert a warranty claim, and (2) that the bonded abrasive wheels are not "merchantable."

To state a claim for breach of implied warranty of merchantability, Plaintiff must plead facts that: (1) a merchant sold goods, (2) the goods were not "merchantable" at the time of the sale, (3) the plaintiff or his property suffered injury or damage, (4) that was proximately or in-fact caused by the defective nature of the goods, and (5) notice to the seller of the injury. *Williams v. FCA US LLC*, No. 17-CV-00844-W-DW, 2018 WL 3973075, at *5 (W.D. Mo. Apr. 16, 2018). As to the second element, "a plaintiff must adequately plead that the merchandise is not 'fit for the ordinary purposes for which such goods are used.'" *Id.* (citation omitted). For this type of claim the goods need not be "exactly as the buyer expected," but they must "satisfy a minimum level of quality." *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) (citation omitted).

11

Defendant first argues that Plaintiff failed to plead a claim for breach of implied warranty of merchantability under Missouri law because Plaintiff did not allege that he tendered the required pre-suit notice of breach to Defendant Forney Industries. (Doc. 8 at 15.) Missouri law requires as a prerequisite to asserting warranty claims notification by the buyer to the seller of the breach within a reasonable time after the buyer discovered a breach or should have discovered a breach. Mo. Rev. Stat. § 400.2-607(3)(a). The required pre-suit notice mandated by Missouri law is due only to the immediate seller, however. *See Browning*, 539 F. Supp. 3d at 974 ("'The buyer is only under a duty to notify the immediate seller, not the manufacturer.'") (quoting *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. banc 1993)). Here, Plaintiff alleges that Defendant "sold the [bonded abrasive wheels] to Plaintiff through a retail store location, Garden City Auto & Farm, in Garden City, Missouri." (Doc. 1 at ¶ 77.) Accepting Plaintiff's factual allegation as true, as the Court must at this early stage, Plaintiff was not required to allege pre-suit notice *to Defendant* to assert an implied warranty claim.

Defendant also argues that Plaintiff fails to state a claim for breach of implied warranty of merchantability because he does not allege a "history of product failure," as necessary to plead that the bonded abrasive wheels Plaintiff purchased were not "merchantable." In *Williams*, on which Defendant relies, the district court held that a plaintiff failed to plead the Jeep they had purchased was not fit for the ordinary purpose where the plaintiffs had alleged that they had driven the vehicles "thousands of miles over several weather seasons." 2018 WL 3973075, at *6. For implied warranty claims involving vehicles, a plaintiff must allege facts that "show that the vehicles are unfit for providing transportation" to adequatlye state a claim for breach of implied warranty of merchantability. *In re Gen'l Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997). In the *Anti-Lock Brake* case, for example, the district court held that the plaintiffs did not plead a breach-of-implied-warranty claim because they did not allege any facts that the vehicles were unfit for providing transportation, reasoning that "Plaintiffs have not alleged brake failure or that they have stopped driving their vehicles because of the defects." *Id.*

Here, Plaintiff does not allege that any bonded abrasive wheel he purchased expired and that it failed when he used it after its expiration. or that Plaintiff stopped using or could not use any of the wheels that he had purchased, for example. In fact, Plaintiff alleges that when he purchased the bonded abrasive wheels he was actually unaware that the wheels could not safely

be used after a shelf-life or expiration date. (Doc. 1 at ¶ 7.). At most, Plaintiff alleges that he would not have purchased the bonded abrasive wheels had he known they had an expiration date or shelf-life. This allegation only goes to Plaintiff's disappointed commercial expectations, however, not whether the bonded abrasive wheels are unfit for the ordinary purposes or satisfy a minimum level of quality. Plaintiff's conclusory allegations that the bonded abrasive wheels were not merchantable is not sufficient.

Defendant's motion to dismiss Count VI is therefore **GRANTED**.

## IV. Conclusion

Therefore, the Court **ORDERS** that (1) Defendant's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction is **DENIED**, and (2) Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim is **GRANTED**. Because Counts II-V are barred by the economic loss doctrine, they are **DISMISSED with prejudice**. Counts I and VI are **DISMISSED without prejudice**.[7]

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 25, 2023

---

[7] Because the Court grants Defendant's motion to dismiss as to Counts I-VI under Rule 12(b)(6), the Court need not consider Defendant's additional argument that the class allegations should be stricken under Rule 12(f).

In addition, at the conclusion of his suggestions opposing Defendant's motion to dismiss, Plaintiff requests leave to amend his complaint to the extent the Court finds any pleading deficiencies. (Doc. 11 at 21.) Plaintiff has neither filed a motion for leave nor explained the particular substance of any proposed amendment. *See* Local Rule 15.1 (requiring *inter alia* a party filing a motion to amend attach the proposed pleading and comply with Local Rule 7.0). Plaintiff's conclusory and perfunctory request for leave to amend in his motion to dismiss briefing is therefore **DENIED without prejudice**. *See GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1036-37 (8th Cir. 2022); *Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021); *Ryan v. Ryan*, 889 F.3d 499, 504 n.4 (8th Cir. 2018); *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006); *Wolgin v. Simon*, 722 F.2d 389, 394-95 (8th Cir. 1983).

13